UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOVEVIEW, LLC et al. | * | |
|     Plaintiffs | * | |
| | * | |
| v. | * | CIVIL NOS. |
| | * | L-09-12 (lead case) |
| | * | L-09-324 (member case) |
| SUNTRUST BANK | * | |
|     Defendant | * | |

*******

MEMORANDUM

Now pending are two interrelated cases, which the Court has consolidated for all purposes, involving a partially completed 192-unit apartment complex located in Dover, Delaware. Construction on the project, known as Dove View, stopped in August 2008 when the lender, SunTrust Bank, declared the loan in default and declined to fund any further construction draws. The project sits, half finished.

In the first suit, DoveView, LLC and the Guarantor-Defendants (collectively, the DoveView Defendants) sued SunTrust Bank for wrongfully cancelling the $17,400,000 construction loan. See Doveview, LLC et al. v. Suntrust Bank, 1:09-cv-00012-BEL.[1] SunTrust responded to the complaint by filing a motion to dismiss or for summary judgment (Docket No. 7).

In the second suit, SunTrust confessed judgment against the DoveView Defendants. See SunTrust Bank v. DoveView, LLC et al., 1:09-cv-00324-BEL. DoveView, LLC and the Guarantor-Defendants have moved to vacate the confessed judgments contending that they were

---

[1] The Guarantor-Defendants are Frank Robino Companies, LLC, Paul Robino, Jeanie Robino, John Carozzi and Michael Stortini.

1

in full compliance with the Loan Agreement when SunTrust wrongfully cancelled the loan and wrongfully confessed judgment against them (Docket No. 16).

After the motions were briefed, the Court held a teleconference on June 12, 2009 to schedule a hearing and determine whether discovery was necessary to develop the facts. SunTrust argued that no discovery was needed because the loan was incontrovertibly in default in August 2008.  SunTrust pointed to three material defaults under the Loan Agreement that entitled it to cancel the loan, call on the guarantees, and foreclose on the property.  According to the Bank, the defendants were in breach because (i) the project was over budget, (ii) the guarantors had breached the mortgage by defaulting on separate loans with the Bank, and (iii) the borrower had failed to provide requested financial information.  The Bank took the position that these defaults were manifest, that DoveView had no defense to offer, and that the DoveView Defendants were merely stalling for time.

During the teleconference, the DoveView Defendants disagreed on all points, contending that when the Bank cancelled the loan in August 2008 the project was on budget, that the guarantors were current on their separate loans, and that the borrower had provided all requested information.  DoveView maintained that discovery would enable it to demonstrate these facts.

The Court scheduled a hearing for June 23, 2009 and permitted DoveView to take limited discovery (three depositions) in preparation.  The stated purpose of the hearing was to determine whether the case was as straightforward as SunTrust had advertised.  The Court heard argument on June 23rd and held a second hearing on July 7th.  These hearings demonstrated that the dispute is not cut and dried and that DoveView has plausible defenses based on an objectively reasonable reading of the loan documents.  Because the loan documents are ambiguous and internally inconsistent, discovery is necessary to determine the parties' intent.

Accordingly, the Court will, in a separate Order of even date, (i) DENY SunTrust's motion to dismiss or for summary judgment without prejudice; (ii) GRANT the DoveView Defendants' motion to vacate the confessed judgments; (iii) VACATE the confessed judgments entered against the DoveView Defendants; (iv) DIRECT the parties to meet and confer pursuant to Federal Rule of Civil Procedure 26, and (v) SET a Federal Rule of Civil Procedure 16 conference in open court to schedule discovery, dispositive motions, and a back-up trial date.

**Discussion**

SunTrust's litigation position is based on a reading of the Loan Agreement that it contends is clear and unambiguous. According to the Bank, the Agreement establishes an all-inclusive, final project budget of $22,349,938. In the event that the project should run over budget, Section 2.10 of the Agreement requires the Borrower promptly to deposit the shortfall with the Lender before the Lender is required to fund any further loan draws.

The Bank contends that in July 2008, DoveView admitted that the project was between $1.5 and $2 million over budget. See Pl.'s Hr'g Ex. 17, Suntrust's Demand Letter of August 11, 2008. Through its attorneys, SunTrust demanded that the Borrower tender the shortfall. When DoveView failed to do so, the Bank declared a default, declined to fund any additional construction draws, and demanded repayment of the loan from the Borrower and the Guarantors. Incidentally, SunTrust also points to two independent breaches of the Loan Agreement: the Guarantors' defaults on separate loans that the Bank extended to them and the Borrower's failure to provide requested financial information.

DoveView urges a divergent reading of the Loan Agreement. According to the Borrower, the Agreement provides that the project budget would not be set until after the loan had closed on July 16, 2007. In his Affidavit, Michael Stortini, a principal of DoveView, LLC.,

3

states that in July 2007 he was still receiving contractor bids and the project was insufficiently advanced to frame a final budget. See Pl.'s Hr'g Ex. 27, Affidavit of Michael Stortini. Nevertheless, the Bank was in a hurry to close the loan and agreed that the final budget would be determined after the closing.

Stortini states that, in accordance with the Loan Agreement, the budget, which was eventually pegged at $25,026,830, was not finalized until October 22, 2007. He represents that the $25,026,830 budget was submitted to the Bank that October, that the Bank never objected to the budget, and that thereafter SunTrust funded nine further draws. Stortini claims that he was shocked and surprised when the Bank unexpectedly contended in July 2008 that the budget was $22,349,938 rather than $25,026,830. His affidavit further represents that the project was always within the $25,026,830 budget.

At this early juncture of the case, the Court could accept SunTrust's position and deny the DoveView Defendants discovery only if the Bank's interpretation of the Loan Agreement is unambiguous and there are no material facts in dispute. Such is not the case. Regrettably, the Agreement is internally inconsistent and ambiguous. Discovery is required to determine the intention of the parties when they entered into the Agreement and related documents. Discovery is also required to determine a number of important facts, including whether the Guarantor-Defendants were in breach of their separate loan agreements.

SunTrust asserts that the Agreement establishes a comprehensive, final budget of $22,349,938 as of the July 16, 2007 closing. As the source of this figure, the Bank points to a single-page document, titled "Use of Proceeds," which states a "Total Project Cost" of that amount. This document, dated April 17, 2007, was prepared by an employee of the Bank. SunTrust contends that the document was annexed to the Loan Agreement as Exhibit A and was

intended to serve as the final, fixed budget. Because the budget in July 2008 exceeded $22,349,938, the Bank reasons, the loan agreement entitled SunTrust to demand that the Borrower immediately deposit the entire shortfall with the Bank.

The case is not so simple. The Loan Agreement does not clearly and unambiguously support SunTrust's position. To the contrary, Recital 5 of the Agreement expressly provides that the "loan budget [will be] mutually agreed-upon post-closing." See Pl.'s Hr'g Ex. 6, Loan Agreement dated July 16, 2007, at 1. This language, found on page one of the Agreement, expressly contradicts the view that a budget prepared three months prior to closing was the final budget. Moreover, the header to Exhibit A states that the document was "Preliminary" rather than "Final." Additionally, the Agreement nowhere refers to Exhibit A as the "Budget" or describes Exhibit A's role in governing the loan.

SunTrust acknowledges that the Loan Agreement could have been drafted more clearly. It argues, however, that a close reading of the Agreement establishes that the Use of Proceeds must be the final budget. The Bank's argument centers on Section 4.14 (Equity), which governs the timing and amount of the equity contributions that the Borrower was required to make. Section 4.14 obligated the Borrower to advance a minimum of $2,108,006 at closing towards land acquisition and "soft costs." It is undisputed that the Borrower satisfied this condition.

During the construction of the four apartment buildings, defined as the "Vertical Construction" phase, the Agreement contemplates that the Borrower would submit a number of draw requisitions. Before the Bank is required to advance a draw, Section 4.14 requires the Borrower to "invest" in the Vertical Construction 14% of the amount of the requisition. Significantly, Section 4.14 expressly specifies that the Borrower's "maximum" equity contribution towards the Vertical Construction would not exceed $1,551,543.

SunTrust makes two telling points.  First, $1,551,543 is 14% of the total Vertical Construction Cost estimate of $11,439,360 found in Exhibit A at line 25.  In order for the 14% figure to compute, the budget must be no more than $22,349,938.  Second, the Bank's total loan was fixed at $17,400,000, meaning that the remainder required to complete the project must come from the Borrower.  If the Borrower's equity contribution was capped according to the figures stated in Section 4.14, then the budget could not exceed $22,349,938.  If the budget were $25,026,830, then there would be a shortfall of close to $3 million that nobody was obligated to fund.  This is an impossibility, the Bank reasons.  Thus, by necessary implication, the budget must have always been $22,349,938 and no more.

DoveView, however, provides a plausible alternative construction of Section 4.14.  Relying on Recital 5, which provides that the final budget would not be set until after closing, DoveView reasons that its maximum contribution must necessarily have changed to conform to the budget as ultimately established.  Given a final budget of $25,026,830, DoveView's equity contribution would have risen to $4,228,035, it maintains.

SunTrust counters that such a construction contradicts the clear meaning of the word "maximum" as found in Section 4.14.  This is true, but accepting the Bank's position that the budget was finalized on the July 16, 2007 closing date requires contradicting the clear meaning of Recital 5.  The Agreement, therefore, is internally inconsistent and ambiguous.

In this regard, it bears mentioning that there is at least one other section of the Loan Agreement that is poorly drafted and presents a logical impossibility.  Section 2.10 provides that the Borrower must immediately make up the full amount of any line-item shortfall any time the project budget exceeds the loan amount for that line-item.  The project budget for Vertical Construction, however, always exceeded the loan's line-item for this expense by at least

$1,551,143. Nevertheless, Section 4.14 provides that the Borrower was to make up the shortfall not all at once but in pro-rata increments over the course of the Vertical Construction draws. Thus, Section 2.10 is directly at odds with Section 4.14.

At the hearing, SunTrust's counsel explained that Sections 2.10 and 4.14 were apparently not harmonized when the Loan Agreement was assembled from a group of standard terms supplemented by terms crafted to fit the specific DoveView loan. Given the length and complexity of modern loan documents, such inconsistencies are not uncommon. Sometimes, inconsistencies are immaterial and do not lead to disputes. Other times, inconsistencies are material and must be resolved through the process of litigation. The instant dispute falls in the latter category. Because the Agreement is ambiguous, the Court must permit discovery and eventually apply the rules of contract construction in order to determine the true intent of the parties.

In order to organize discovery, counsel shall hold a face-to-face Fed. R. Civ. P. 26 conference and submit a joint status report no later than Friday, July 31, 2009. The Court will then hold a Fed. R. Civ. P. 16 conference in open court on Wednesday, August 5, 2009 at 9:00 a.m. Apart from the standard scheduling matters, the Court would appreciate the views of counsel on a number of points, including the following:

1. The loan documents contain two provisions under which both the Borrower and the Lender waive trial by jury. See Pl.'s Hr'g Ex. 34, Mortgage Note, § 16 and Pl.'s Hr'g Ex. 36, Guaranty of Payment, § 14. Will this case, therefore, proceed as a bench trial?

2. If the case proceeds as a bench trial, should we dispense with summary judgment motions and proceed directly to trial?

3. The case might be phased with a number of limited issues to be decided first. These issues might include: (i) whether the Guarantor-Defendants were in default under the separate loans, or (ii) assuming arguendo DoveView's theory of the loan, whether DoveView had the financial ability to continue to meet its hefty equity contributions for the August 2008 draw and beyond.

4. Section 8.02 of the Loan Agreement limits the Lender's liability. Is that section enforceable and, if so, how is it to be applied?

5. Section 2.05(e) of the Loan Agreement provides that the Lender is not required to fund any further draws if it doubts that the Borrower has sufficient funds available to complete the project on time and on budget. Did SunTrust terminate the loan under this provision, and – if so – was the termination proper?

6. DoveView's counsel mentioned that he would be offering expert testimony on a variety of subjects, including SunTrust's practice of rolling over term loans into interest-only lines of credit and the Bank's construction loan practices. Before the parties engage experts, I wish to address whether, and on what subjects, expert testimony will be permitted.

7. Doveview's counsel, Mr. Fellheimer, stated that he will be having surgery next week. The Court wishes him a speedy recovery but needs to know when he will be back at work and whether his firm and local counsel, Mr. Stichel, can address the above issues in his absence.

**Conclusion**

For the reasons stated, the Court will, in a separate Order of even date: (i) DENY SunTrust's motion for summary judgment without prejudice; (ii) GRANT the DoveView Defendants' motion to vacate the confessed judgments; (iii) VACATE the confessed judgments

entered against the DoveView Defendants; (iv) DIRECT the parties to meet and confer pursuant to Federal Rule of Civil Procedure 26 by July 31, 2009, and (v) SET a Federal Rule of Civil Procedure 16 conference to schedule discovery, dispositive motions and a back-up trial date on August 5, 2009 at 9:00 a.m. in Courtroom 7A.

    Dated this 10th day of July, 2009.

                                                                                                              _____/s/_____  
                                                                                       Benson Everett Legg  
                                                                                       Chief Judge  
                                                                                       United States District Court